UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60317-CIV-COHN/SELTZER

BROWARD CITIZENS FOR FAIR DISTRICTS,
a Florida non-profit corporation, et al.,

        Plaintiffs,

vs.

BROWARD COUNTY, a political subdivision of the
State of Florida,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

**THIS CAUSE** is before the Court upon Defendant Broward County's Motion to

Dismiss [DE 22] ("Motion").  The Court has carefully reviewed the Motion, Plaintiffs'

Response [DE 23] ("Response"), Defendant's Reply [DE 24] ("Reply"), and is otherwise

fully advised in the premises.

### I. BACKGROUND

Plaintiffs Broward Citizens for Fair Districts ("Broward Citizens"), Christopher L.

Smith ("Smith"), and T.J. Reddick Bar Association ("T.J. Reddick") (collectively

"Plaintiffs") commenced this action on February 22, 2012.  Complaint [DE 1].[1]  The

charter of Defendant Broward County ("Broward County") requires that every ten years,

after publication of a United States census, the nine single member commission

districts be redrawn in nearly equal proportion to the population.  Am. Compl. at 2.  On

_____

[1]     On March 14, 2012, the Court granted Plaintiffs' motion seeking to amend
the complaint to eliminate Perry Thurston and Eric Jones as Plaintiffs.  See DE 18.
Plaintiffs filed an Amended Complaint later that same day.  See DE 19.

December 13, 2011, the Broward County Commission ("Commission") voted 6-3 to approve a redrawn Broward County Commission district map ("District Map").  Id. at 1. This vote followed seven months of public hearings designed to encourage public participation in the redistricting process.  Id. at 3.  Plaintiffs allege that the District Map selected by the Commission was not previously disclosed to the public and that the public had no opportunity to be heard on the map.  Id.  On January 31, 2012, the Commission determined that a resolution officially adopting the District Map would be voted upon on February 14, 2012.  Id.  at 4.

The Amended Complaint seeks declaratory and injunctive relief on the grounds that the District Map violates the Voting Rights Act, 42 U.S.C. § 1973, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.  Id. at 5 ¶ 1.  Specifically, the Amended Complaint contends that the District Map intentionally removes African American and Hispanic voters from District 7 and disperses them into District 9 to minimize the minority voters in District 7. Id. at 5 ¶ 1(a).  Plaintiffs also contend that the district lines for District 7 were intentionally redrawn to remove a minority candidate, RM, who had already announced his intention to seek the District 7 seat, id. at 6 ¶ 1(b), and to reduce the influence of a single residential neighborhood, Inverrary, upon District One.  Id. at 6 ¶ 1(c).  They also argue that African American residents and voters from District 1 were intentionally redistricted to Districts 3 and 9 to dilute the minority influence in District 1, id. at 6 ¶ 1(d), and that a disproportionate share of minority voters were placed in District 9 to "pack" the minority vote in that district.  Id. at 7 ¶ 1(e).  The Amended Complaint also alleges that the district lines were engineered to place a white, incumbent Florida

2

legislator in District 1.  Id. at 7 ¶ 1(f).  Finally, the Amended Complaint alleges that the District Map was approved without the opportunity for the public to be heard prior to its approval, violating basic standards of fairness and due process.  Id. at 8 ¶ 1(g)-(h).

Broward County has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging that Plaintiffs lack standing to bring this lawsuit, Plaintiffs fail to state a claim under the Voting Rights Act, Plaintiffs fail to state a claim under the Equal Protection Clause, and that Plaintiffs fail to state a claim under the Due Process Clause.  Motion at 1-2.

## II. DISCUSSION

### A. Legal Standard.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing.  Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (internal quotations omitted)); see also Holy Cross Hosp., Inc. v. Baskot, No. 10–62133–CIV, 2010 WL 5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore, Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing.").  A claim cannot proceed in federal court if the plaintiff does not have standing. Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 471 (1982).

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to

3

dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 556.

## B. Standing.

Broward County first argues that Plaintiffs' claims brought under Section 2 of the Voting Rights Act and the Equal Protection Clause should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because, as currently plead, Plaintiffs lack standing to raise these claims.  Motion at 6.  Specifically, Broward County argues that Broward Citizens and T.J. Reddick lack standing because (1) they do not reside in any specific district and (2) cannot register to vote.  Id. at 8.  Broward County also challenges whether T.J. Reddick, an organization "primarily comprised of Black and minority attorneys throughout Broward County," can meet the standard for organizational standing.  Id. at 9 (quoting Am. Compl. at 9 ¶ 4).  Finally, Broward

4

County asserts that individual plaintiff Smith lacks standing because he fails to allege that he is a registered voter and does not reside in Districts 1 and 7.  In their Response, Plaintiffs dispute that the Amended Complaint insufficiently pleads standing as to the current Plaintiffs, but agrees to "amend the Complaint to address where appropriate, the standing concerns raised in the Motion to Dismiss."  Response at 5.

    Under the Voting Rights Act, any "aggrieved person" may institute a proceeding to enforce the right to vote.   42 U.S.C. §1973a(a).  The constitutional standing analysis requires a plaintiff to demonstrate that: (1) the plaintiff suffered an injury in fact; (2) the injury was causally connected to the defendant's action; and (3) the injury will be redressed by a judgment in the plaintiff's favor.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  If a plaintiff meets the standing requirement under the Voting Rights Act, he has also satisfied the requirements for a voting claim brought pursuant to the fourteenth amendment.  Perry–Bey v. City of Norfolk, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009).

Other district courts have held that to demonstrate an injury in fact, a vote dilution plaintiff must show that he or she (1) is registered to vote and resides in the district where the discriminatory dilution occurred; and (2) is a member of the minority group whose voting strength was diluted.  Comm. for a Fair & Balanced Map v. Ill. Bd. of Elections, No. 1:11–CV–5065, 2011 WL 5185567, at *1 n.1 (N.D. Ill. Nov. 1, 2011) (citing Perry–Bey, 678 F. Supp. 2d at 362-65; Hall v. Virginia, 276 F. Supp. 2d 528, 531-32 (E.D. Va. 2003); Ill. Legislative Redistricting Comm'n v. LaPaille, 782 F. Supp. 1267, 1271 (N.D. Ill. 1991)).  Thus, the Court agrees with Broward County that in order for Plaintiff Smith to have standing, the complaint must be amended to allege that

Smith is a registered voter.

The Court also agrees with Broward County's argument that, as currently plead, Smith would only have standing regarding the District Nine packing claim.  See Am. Compl. at 7 ¶ 1(e).  The Amended Complaint alleges that Smith resides in the proposed District 9 and lived in former District 7.  Id. at 9 ¶ 3.  Case law is clear that a plaintiff has standing to bring a claim based on racial gerrymandering in the district where he resides.  Wright v. Dougherty Cnty., 358 F.3d 1352, 1355-56 (11th Cir. 2004) (plaintiff who lived in overrepresented district did not have standing to bring claim on behalf of those who lived in underrepresented district); Dillard v. Baldwin Cnty. Comm'rs, 225 F.3d 1271, 1279 (11th Cir. 2000) abrogated on other grounds by 495 F.3d 1325 (11th Cir. 2007) ("[I]f the plaintiff lives in the racially gerrymandered district, she has standing; if she does not, she must produce specific evidence of harm other than the fact that the composition of her district might have been different were it not for the gerrymandering of the other district.").  Thus, to bring a claim based on Districts 1 or 7, Smith must allege specific facts establishing that he has been harmed by the proposed redistricting.  See Dillard, 225 F.3d at 1279.

The Court agrees with Broward County's argument that Broward Citizens and T.J. Reddick, as organizations, do not have standing to bring these claims on their own behalf.  See Motion at 8.  Thus, for Broward Citizens and T.J. Reddick to have standing, each must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v. Wash. State

6

Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  The Court agrees with Broward

County that the Amended Complaint fails to adequately plead that Broward Citizens

and T.J. Reddick have associational standing.  No where does the Amended Complaint

allege that members of either organization reside in any of the impacted districts.  The

Amended Complaint also fails to make any allegations from which the Court can

conclude that protecting minority voting rights are "germane" to either organization's

purpose.  See Hunt, 432 U.S. at 343.  Accordingly, the Court will grant Broward

County's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) because

the Amended Complaint, as currently plead, fails to establish that any of the Plaintiffs

have standing.  However, the Court will grant Plaintiffs leave to re-plead its standing

allegations.

### C. Voting Rights Act Claim.

Broward County also moves to dismiss Plaintiffs' claim under Section 2 of the

Voting Rights Act, 42 U.S.C. § 1973(a) ("Section 2 claim") for failure to state a claim.

Motion at 10-17.  Broward County first argues that Plaintiffs have failed to state a

Section 2 claim because they have failed to allege that African American voters were a

numerical majority in Districts 1 or 7 before adoption of the District Map.  Id. at 12-13.

Second, Broward County asserts that Plaintiffs have failed to state a coalition Section 2

claim because they have failed to adequately allege that African Americans and

Hispanic voters are a politically cohesive minority group.  Id. at 13-17.[2]  Plaintiffs

---

[2]       In its Reply, Broward County states that: "Section 2 recognizes two
claims.  The first is for vote dilution without intentional discrimination, which requires
compliance with the three-part threshold test established in Gingles, 478 U.S. 30, 35
(1986).  The second is a claim for intentional vote dilution, which is subject to the same

7

oppose Broward County's arguments, pointing to specific paragraphs of the Amended

Complaint where they allege that the African American and Hispanic populations in

Districts 1 and 7 are minority majorities and are politically cohesive.  Response at 6

(citing Am. Compl. at 10 ¶¶ 5-6).  Plaintiffs also dispute that they have made a coalition

claim and point to the Supreme Court's recent decision in Bartlett v. Strickland, 556

U.S. 1 (2009), contending that the Gingles analysis should not apply to cases involving

intentional misconduct or racial discrimination.  Id. at 6-7.

Title 42 U.S.C. § 1973 makes it illegal for any state or political subdivision to

deny or abridge the right of any citizen to vote on the basis of race or color.  42 U.S.C. §

1973(a).  The Voting Rights Act is violated "if, based on the totality of circumstances, it

is shown that the political processes leading to nomination or election in the State or

political subdivision are not equally open to participation by members of a class of

citizens protected by subsection (a) of this section in that its members have less

---

standard as one for intentional discrimination under the Equal Protection Clause."
Reply at 2.  The Court disagrees with this analysis of Section 2.  After Mobile v. Bolden,
446 U.S. 55 (1980), was decided, Section 2 was amended to "to make clear that a
violation of § 2 could be proved by showing discriminatory effect alone, rather than
having to show a discriminatory purpose, and to establish as the relevant legal standard
the 'results test.'" Thornburg v. Gingles, 478 U.S. 30, 35 (1986).  The Eleventh Circuit
has applied the Gingles test to cases involving allegations of intentional discrimination
and has held that evidence of discriminatory intent alone is insufficient to state a
Section 2 claim.  Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999)
(affirming grant of summary judgment to appellees on appellants' vote dilution claim
where "Appellants have offered no evidence of political cohesion or a majority white
voting bloc. Indeed, as discussed earlier, Appellants' only evidence concerns
allegations of Appellees' discriminatory intent. This evidence is wholly insufficient to
meet the requirements of the Gingles factors.").

opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  42 U.S.C. § 1973(b).

The Supreme Court has held that to state a Section 2 claim, a plaintiff must establish (1) he is a member of a minority group that is "sufficiently large and geographically compact to constitute a majority in a single-member district;" (2) the minority group is "politically cohesive;" and (3) the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate."  Thornburg v. Gingles, 478 U.S. 30, 50-51 (1986).  While Gingles involved a multimember district, the Supreme Court has made clear that these factors must also be satisfied in cases, such as this, which involve single-member districts.  See Growe v. Emison, 507 U.S. 25, 40-41 (1993).

 "[O]nly when a party has established the Gingles requirements does a court proceed to analyze whether a violation has occurred based on the totality of the circumstances."  Strickland, 556 U.S. at 11-12.  Generally, to meet the first Gingles requirement, a plaintiff asserting a Section 2 claim must establish by a preponderance of the evidence that the minority population in the proposed district makes up more than 50 percent of the voting-age population in the relevant geographic area.  Id. at 18, 20. However, the Supreme Court cautioned that this holding "does not apply to cases in which there is intentional discrimination against a racial minority."  Id. at 20.

Broward County's first argument to dismiss the Section 2 claim is that Plaintiffs have failed to meet the first Gingles factor, that is, Plaintiffs have failed to allege that African American voters comprise a numerical majority in either Districts 1 or 7.  Motion at 12.  Plaintiffs dispute this, pointing to a paragraph in the Amended Complaint where

9

they allege that the African American and Hispanic "voting electorate in Commission Districts 1 and 7 . . .  have become sufficiently large and geographically compact to constitute a majority in those districts."  Am. Compl. at 10 ¶ 5.  Plaintiffs also allege that Broward County, as a whole, represents a "majority-minority political subdivision."  Id. at 10 ¶ 6.  The Court agrees with Broward County, that as currently plead, Plaintiffs have failed to meet the first Gingles factor.  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Merely reciting the elements of a cause of action, as the Plaintiffs have done, does not meet this standard.

The Court also notes the inconsistency that runs throughout Plaintiffs' Response and Amended Complaint.  In support of their argument that the Gingles factors have been adequately plead, Plaintiffs point to Paragraph 5 of the Amended Complaint which references both the African American and Hispanic voting electorate.  Response at 6 (citing Am. Compl. at 10 ¶ 5).  Yet, in the very same paragraph, Plaintiffs dispute Broward County's argument that they have insufficiently alleged a coalition, stating that "[w]hile the complaint acknowledges that the infringement and dilution visited upon the Black voting population has similarly affected other minority populations, the claims stand independently." Response at 6.  Plaintiffs cannot have it both ways: they cannot rely on the percentage of Hispanic voters in the districts to support their argument that they have demonstrated a minority-majority population, but also claim that they are bringing claims solely on behalf of African American voters and do not have to substantiate allegations of political cohesion between African American and Hispanic

10

voters.

Indeed, the Court questions whether Plaintiffs can successfully plead a vote dilution claim regarding Districts 1 and 7 without alleging a coalition between African American and Hispanic voters.  Despite Plaintiffs' general allegations regarding a "sufficiently large and geographically compact" majority, elsewhere in the Amended Complaint, Plaintiffs provide contradictory statistics regarding the minority population in Districts 1 and 7.  Specifically, Plaintiffs allege that prior to approving the District Map, the total African American and Hispanic population in District 1 was 53% (32% African American and 21% Hispanic) and its voting age population was 50% (29% African American and 21% Hispanic).  Am. Compl. at 4 n.9.[3]  Under the District Map, the total African American and Hispanic population was reduced to 51% (23% African American and 28% Hispanic).  Id.  The voting age population in District 1 was reduced to 22% African American and 27% Hispanic.  Id.  This totals just 49%.  See id.  For District 7, Plaintiffs allege that the District Map reduces the total African American and Hispanic population from 46% (25% African American and 21% Hispanic) to 43% (20% African American and 23% Hispanic).  Id.  It also alleges that the District Map reduced the voting age population from 44% (22% African American and 20% Hispanic)[4] to 39%.  Id.  Given Plaintiffs' contention that the voting age population of African American voters in District 1 was reduced from only 29% to 22% and that the voting age

---

[3]      In Negron v. City of Miami Beach, the Eleventh Circuit held that the proper statistic to determine whether a minority group is sufficiently large and geographically compact is voting age population as refined by citizenship.  113 F.3d 1563, 1569 (11th Cir. 1997).

[4]      The cited percentages actually total only 42%.  Id.

population of African American voters in District 7 was reduced from 22% to some lesser percentage, it is difficult to discern how Plaintiffs' have alleged a majority-minority.[5]  Even without applying the Strickland 50 percent majority-minority standard because of the Supreme Court's caution that its holding "does not apply to cases in which there is intentional discrimination against a racial minority," 556 U.S. at 20, the Court does not believe that a voting age population in both districts of less than 30% can constitute a majority-minority population sufficient to support a Section 2 claim.[6] Accordingly, the Court will grant Broward County's motion to dismiss Plaintiffs' Section 2 claims regarding Districts 1 and 7 on the grounds that Plaintiffs have failed to adequately plead the first Gingles factor.[7]

---

[5]      Plaintiffs do not specify the break down of the reduction of the African American and Hispanic voting age population in District 7, alleging only that the voting age population was diluted to 39%.  Am. Compl. at 4 n.9.

[6]      In its Reply, Broward County also points out that Plaintiffs have failed to present alternative maps to the Court or "offer any information about how they would create majority Black districts."  Reply at 5.  The Court agrees that this represents an additional pleading deficiency in Plaintiffs' Amended Complaint.  The Eleventh Circuit has "repeatedly construed the first Gingles factor as requiring a plaintiff to demonstrate the existence of a proper remedy."  City of Belle Glade, 178 F.3d at 1199.  Plaintiffs mere allegation that "[s]everal alternate maps were presented to the County Commission which would potentially achieve the objectives of the County's redistricting mandate without violating the constitutional rights of the Black and other minority voting population" is conclusory and insufficient to meet Plaintiffs' pleading burden.  See Iqbal, 129 S. Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[7]      To the extent that Plaintiffs argue that the Supreme Court's holding in Strickland relieves Plaintiffs of their burden of establishing the Gingles factors, the Court disagrees.  See Response at 7-8.  Eleventh Circuit precedent clearly establishes that a Section 2 claim requires "a showing of discriminatory results, and it admits of no exception for situations in which there is discriminatory intent but no discriminatory results."  Johnson v. DeSoto Cnty. Bd. of Comm'rs, 72 F.3d 1556, 1563 (11th Cir.

12

Broward County's second argument to dismiss the Section 2 claim is that Plaintiffs have failed to state a Section 2 coalition claim.  Motion at 13-17.  Plaintiffs contend that they have not raised any coalition claim and that they have adequately plead the Gingles factors.  Response at 6.  Broward County asserts that the current Plaintiffs lack standing to assert a coalition claim on behalf of Hispanic voters because there are no Hispanic plaintiffs.  Motion at 13-14.  Broward County also argues that Plaintiffs have failed to adequately plead the three Gingles factors on behalf of a coalition.  Id. at 15-17.

The Eleventh Circuit has held that two minority groups may be considered a single minority for the purposes of a Section 2 claim if they can establish that they behave in a politically cohesive manner.  Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Com'rs,  906 F.2d 524, 526 (11th Cir. 1990).  As discussed in Section B, the Court has already found that the Plaintiffs lack standing to bring these claims as currently plead.  The Court disagrees, however, that Plaintiffs must necessarily join a Hispanic plaintiff for Plaintiffs to have standing to bring a coalition claim on behalf of an African American-Hispanic coalition.  Broward County notes that it has "been unable to find a single case in which members of one minority group claim a coalition with another that does not acquiesce to the coalition by joining the suit."  Motion at 14.  A dearth of case law does not necessarily mean that Plaintiffs would lack standing to bring claims on behalf of non-African American minorities.  Additionally, if Plaintiffs amend their

---

1996).  The court elaborated that proof of intent to discriminate "is circumstantial evidence of discriminatory results that should be considered in addressing the 'totality of the circumstances.'"  Id. at 1565.  Accordingly, this Court will not overturn 16 years of Eleventh Circuit jurisprudence based on dicta.

allegations regarding the associational Plaintiffs, Plaintiffs may be able to plead, for one or both organizations, that representing the interests of minority voters such as Hispanics is "germane to the organization's purpose."  See Hunt, 432 U.S. at 343.

Broward County next argues that any coalition claim Plaintiffs assert fails to meet all three elements of the Gingles test.  Motion at 15-17.  Broward County contends that because the Amended Complaint alleges a 50% total voting age African American and Hispanic population in District 1 and a 46% total voting age African American and Hispanic population in District 7, they have not alleged a numerical majority which satisfies the first Gingles prong.  Id. at 15.  The Court finds that such a conclusion is inappropriate at this stage in the proceeding.  In Strickland, the Supreme Court explicitly stated that its holding that a party asserting a Section 2 claim must demonstrate by a preponderance of the evidence that the minority population is greater than 50 percent did not apply to cases "in which there is intentional discrimination against a racial minority."  556 U.S. at 20.  Here, because the Amended Complaint contains numerous allegations of intentional misconduct on the part of Broward County, including an allegation that one commissioner ordered that District 7 be "bleached," Strickland's holding would not apply.  See Am. Compl. at 6 ¶ 1(a).

The Court agrees, however, that the Amended Complaint fails to adequately plead political cohesion on the part of African American and Hispanic voters, as required by Gingles' second prong.  The Amended Complaint contains merely a bare assertion that African American and Hispanic voters "are politically cohesive."  Am. Compl. at 10 ¶ 5.  A bare assertion of an element of a cause of action does not present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

14

its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).[8]  Likewise,

Plaintiffs allegation that "the non-Hispanic White population votes sufficiently as a bloc

to usually defeat the Black and Hispanic electorate's preferred candidate" must be re-

plead to allege more than this mere legal conclusion.  See Am. Compl. at 10 ¶ 5.

### D. Equal Protection Claim.

Plaintiffs also move to dismiss Plaintiffs' claim brought pursuant to the Equal

Protection Clause.  Motion at 17-24.  Broward County alleges both that Plaintiffs'

allegations do not show discriminatory intent and that Plaintiffs' allegations do not show

discriminatory impact.  See id.  Plaintiffs disagree, contending that they have alleged

specific facts establishing an Equal Protection claim in the Amended Complaint.

Response at 9-10.

The Equal Protection Clause of the Fourteenth Amendment provides that no

state shall "deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1.  To establish an Equal Protection claim based on racial

gerrymandering, a plaintiff may demonstrate that the district is "so bizarre on its face

───────────────

[8]  While the Court does not conclude that Plaintiffs must present statistical
evidence of political cohesion at this stage of the proceedings, Plaintiffs must allege
something beyond a conclusory allegation that African Americans and Hispanics are
politically cohesive.  The Court disagrees with Broward County's assertion that a
previous case which found that African Americans and Hispanics are not politically
cohesive would mandate dismissal here.  See Motion at 16.  The mere fact that the
Eleventh Circuit found African American and Hispanic voters in a neighboring county
were not politically cohesive 22 years ago has no weight here.  See Pope v. Cnty. of
Albany, No. 1:11-CV-00736 (LEK/DRH), 2011 WL 3651114, at *4 (N.D.N.Y. Aug. 18,
2011) ("Nor can the Court conclude that blacks and Hispanics in Albany County are
currently politically cohesive because a court concluded they were politically cohesive
more than eight years ago. . . . As nearly twenty years have elapsed since the adoption
of the Consent Decree, it lacks little probative value in the determination of whether the
black and Hispanic communities in Albany County are politically cohesive at present.").

that it is 'unexplainable on grounds other than race.'" <u>Miller v. Johnson</u>, 515 U.S. 900, 905 (1995) (quoting <u>Shaw v. Reno</u>, 509 U.S. 630, 644 (1993)).  Alternatively, the plaintiff may "show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." <u>Id.</u> at 916.  "To make this showing, a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." <u>Id.</u>  The Eleventh Circuit has held that "to establish a constitutional vote dilution claim, Plaintiffs must show that: (1) the county's black population lacks an equal opportunity to participate in the political process and elect candidates of its choice; (2) this inequality of opportunity results from the county's at-large voting scheme; and (3) a racially discriminatory purpose underlies the county's voting scheme." <u>Johnson v. DeSoto Cnty. Bd. of Comm'rs</u>, 204 F.3d 1335, 1345 (11th Cir. 2000).

The majority of Broward County's arguments that Plaintiffs have failed to allege discriminatory intent involve impermissible factual challenges to the Amended Complaint.  For example, Broward County argues that the District Map's exclusion of an African American opponent, RM, to protect an incumbent in District 7 does not support a finding of discriminatory intent.  Response at 18 (citing Am. Compl. at 7 ¶ 1(f)).  Broward County cites <u>Bush v. Vera</u>, 517 U.S. 952, 968 (1996), for the proposition that "allegations of political motivation do not support a racial gerrymandering claim because

a legislative body may use incumbency protection in redistricting 'regardless of its awareness of its racial implication.'"  Id.  In Vera, the Supreme Court found that the proposed districts were unconstitutional and noted that "[h]ere, the District Court had ample bases on which to conclude both that racially motivated gerrymandering had a qualitatively greater influence on the drawing of district lines than politically motivated gerrymandering, and that political gerrymandering was accomplished in large part by the use of race as a proxy."  Id. at 969.  Thus, the Court believes that Broward County's reliance on Vera is misplaced because, at this stage of the proceedings, the Court must accept all allegations in the Amended Complaint as true.  Twombly, 550 U.S. at 555.

Here, Plaintiffs have alleged that the Commission improperly considered race as the primary factor in redistricting based on: "(1) holding meetings outside of sunshine; (2) comments made by one Commissioner during public hearing process confirming that race was a factor; and (3) comments made by one Commissioner to other County Commissioners and members of the general public that a particular district seat needed to be 'bleached.'"  Am. Compl. at 8-9 ¶ 1(i).  The Court agrees with Plaintiffs that it would be improper to deem these allegations "irrelevant" for the purposes of this Motion, as Broward County requests.  See Response at 10; Motion at 19-20.  Broward County's arguments go to the weight and sufficiency of Plaintiffs' case rather than to the basic issue of whether Plaintiffs have stated an Equal Protection claim.[9]  The Court

_____

[9]      For example, Broward County argues that Plaintiffs' allegation that one Commissioner said District 7 needed to be "bleached" is insufficient for Plaintiffs to maintain their claim because "[e]ven if true, one Commissioner's alleged comment does not show that race predominantly motivated the Six Commissioners who approved the 2011 Map."  Motion at 19.  At this stage in the proceedings, the Court finds that it is inappropriate to weigh the impact this comment may have had upon the other members

finds that Plaintiffs' allegations, if proven, could establish discriminatory intent.

The Court is also unpersuaded that Plaintiffs failure to allege that Districts 1, 7, and 9 were "not compact, non-contiguous, or that [the Commission] did not respect political subdivisions" is fatal to Plaintiffs' Equal Protection claim.  See Motion at 21.  In Miller, the Supreme Court listed factors such as "compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests" as possible ways a plaintiff could demonstrate that race predominated redistricting.  Miller, 515 U.S. at 916.  However, it cautioned that these were neither exhaustive nor mandatory factors.  See id.

Broward County also argues that Plaintiffs' Amended Complaint fails to allege a discriminatory impact from the District Map.  Motion at 21-24.  Broward County states that "Plaintiffs' burden to show discriminatory impact is akin to—but no less than—their burden to satisfy Gingles' three-prong standard."  Motion at 21.  Because Plaintiffs have only alleged that the minority voting age population in District 1 decreased from 50% to 49% and from 44% to 39% in District 7, Broward County contends that Plaintiffs have failed to allege any discriminatory impact.  Id. at 23.

The Eleventh Circuit has stated that a plaintiff must establish a discriminatory impact to maintain an Equal Protection claim.  See Johnson, 204 F.3d at 1345 n.20 ("Case law makes apparent that the 'discriminatory effects' requirement encompasses both inequality of opportunity and a causation element.").  "To show that inequality of opportunity is caused by a particular electoral system, a plaintiff must establish that an

_____

of the Commission.

alternative election scheme exists that would provide better access to the political process. . . . [I]f a minority cannot establish that an alternative election scheme exists that would provide better access to the political process, then the challenged voting practice is not responsible for the claimed injury." Id. at 1346 (internal citations and quotations omitted).  Broward County cites Martinez v. Bush, 234 F. Supp. 2d 1275, 1336 (S.D. Fla. 2002), for the proposition that "without an initial showing of the three factors discussed in Gingles, a plaintiff [asserting an Equal Protection violation] cannot demonstrate that any adverse effect actually results from the challenged legislation, no matter what other circumstantial factors of vote dilution may be alleged."  Motion at 23 (citing Martinez, 234 F. Supp. 2d at 1336).  Because the Court has already determined that Plaintiffs have failed to establish the Gingles factors due to inconsistency in their pleading regarding whether it has brought claims on behalf of an African American and Hispanic coalition, or solely on behalf of African American voters and conclusory allegations regarding political cohesion and that the white majority voted as a bloc, the Court also finds that Plaintiffs have failed to establish the discriminatory impact necessary to substantiate an Equal Protection claim.  Accordingly, the Court will dismiss Plaintiffs' Equal Protection claim and afford Plaintiffs the opportunity to amend its complaint.[10]

---

[10]      Broward County also argues that based on the Supreme Court's holding in Strickland, Plaintiffs cannot establish a cognizable injury because the combined African American and Hispanic voting age population in Districts 1 and 7 never was greater than 50 percent.  Motion at 23.  As discussed in Section D, supra, the Court has explained that the Supreme Court stated that its holding did not apply to cases like this which involve accusations of intentional discrimination.  See Strickland, 556 U.S. at 220.

19

## **E. Due Process Claim.**

Broward County also moves to dismiss Plaintiffs' third claim. Broward County characterizes this claim as seeking "relief under both Section 2 and the Equal Protection Clause because the Commission allegedly failed to follow Florida's Fair Districting Amendments." Motion at 25. Plaintiffs characterize this claim as a Due Process claim. Response at 11-12.[11] Broward County urges that this claim fails "because no one has a constitutional right to be heard before the Commission adopts a redistricting map." Motion at 26. Plaintiffs argues that the Court should reject this argument because "the conduct at the hearing, including the refusal to follow its own previously established rules, the refusal to accept further public comment on the 'new maps' and the inadequate notice constituted the constitutionally inadequate process." Response at 12.

The Due Process Clause of the United States Constitution "requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). To establish a Due Process claim, Plaintiffs must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Id. The heart of Plaintiffs' Due Process claim is that the redistricting process violated African American voters' due process rights because "[t]he County Commission failed to follow its own proposed standards." Am.

---

[11]     Accordingly, the Court will refer to Plaintiffs' third cause of action as a Due Process claim.

Compl. at 16 ¶ 33.[12]   The Court agrees with Broward County that the alleged violation of its voluntary adoption of the Fair Districting Standards cannot serve as the basis for a Due Process claim.  Broward County's "refusal to follow its own previously established rules," standing alone, does not establish deprivation of a constitutionally protected liberty or property interest.  See Response at 12.  Plaintiffs' very complaint states that "Broward County is not required to use Fair Districting Standards for Federal congressional and State legislative districts recently added to the State Constitution." Am. Compl. at 2 n.4.  Accordingly, the Court will dismiss Plaintiffs' Due Process claim with prejudice.

III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendant Broward County's Motion to Dismiss [DE 22] is **GRANTED**;

2.   Plaintiffs may amend their complaint to clarify their allegations regarding:

a.   Plaintiffs standing to bring this case;

b.   Whether Plaintiffs bring their Voting Rights Act and Equal Protection claims on behalf of an African American and Hispanic coalition or solely on behalf of African American voters;

c.   The Gingles factors in their Voting Rights Act claim regarding Districts 1 and 7; and

d.   discriminatory effects under their Equal Protection claim;

---

[12]   Elsewhere in the Amended Complaint, Plaintiffs elaborated that on May 3, 2011, the Commission voluntarily adopted the Fair Districting Standards for congressional and State legislative districts added to the Florida constitution.  Am. Compl. at 2 & 2 n.4.

3.     Plaintiffs' Due Process Claim (Count III) is **DISMISSED WITH PREJUDICE**;

4.     Plaintiffs must file their Second Amended Complaint no later than **April 9, 2012**; and

5.     Plaintiffs are also directed to re-work the numbering of their Second Amended Complaint so that each paragraph has its own unique number.  The Second Amended Complaint should have no shared paragraph numbers, even for paragraphs in separate sections.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 3rd day of April, 2012.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.